IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 7, 2016

**STATE OF TENNESSEE v. KEVIN LADELL GRANDBERRY**

**Appeal from the Circuit Court for Lauderdale County**
**No. 9368      Joe H. Walker, III, Judge**
_____

**No. W2015-01344-CCA-R3-CD  -  Filed September 28, 2016**
_____

The defendant, Kevin Ladell Grandberry, was indicted for first-degree premeditated murder, murder in the perpetration of a felony, especially aggravated robbery, attempted first degree murder, employing a firearm during the commission of a dangerous felony, felon in possession of a weapon, and theft between $1000 and $10,000. Following trial, a jury found the defendant guilty of murder in the perpetration of a felony, especially aggravated robbery, aggravated assault, felon in possession of a weapon, and theft between $1000 and $10,000. The trial court sentenced the defendant to an effective sentence of life without the possibility of parole plus 27 years in confinement. On appeal, the defendant argues the evidence was insufficient to support his convictions. After review, we affirm the defendant's convictions, but remand to the trial court for entry of amended judgments reflecting, per the sentencing hearing transcripts, that the sentences in Counts 2 and 3 are to be served concurrently.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

George D. Norton, Jr., Selmer, Tennessee, for the appellant, Kevin Ladell Grandberry.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; D. Mike Dunavant, District Attorney General; and Julie K. Pillow and Mark E. Davidson, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

## Factual and Procedural History

This case arises out of the robbery of the BP Express convenience store in Ripley, Tennessee on November 14, 2012, that resulted in the death of the victim, Deepal Patel.[1] The defendant, Kevin Grandberry, was subsequently charged with first-degree premeditated murder, murder in the perpetration of a felony, especially aggravated robbery, attempted first degree murder, employing a firearm during the commission of a dangerous felony, felon in possession of a weapon, and theft between $1000 and $10,000. The case proceeded to a jury trial where the below-summarized proof was presented.

On November 14, 2012, Marvin Shepard was working at the BP Express in Ripley, Tennessee with the victim. As the two men were preparing to close that evening, Mr. Shepard went to the restroom. While in the restroom, he heard a gunshot come from the front of the store. When Mr. Shepard returned to the main part of the store, he did not see the victim but, instead, discovered a masked individual holding the cash register and slamming it on the floor. As he moved towards the perpetrator, Mr. Shepard slipped on some loose change and fell to the floor. When he regained his "senses" after falling, the perpetrator was standing over Mr. Shepard with his gun pointed at Mr. Shepard's head and directing him not to move. The perpetrator then fled the store with the metal cash box.

After the perpetrator left the scene, Mr. Shepard realized that he was lying next to the victim and that the victim had been shot in the neck. While most of the perpetrator's face was covered during the robbery, Mr. Shepard testified that he got a good look at both the mask worn by the perpetrator and the perpetrator's eyes, describing them as "crazy eyes, wild." He was able to identify both the mask and the defendant at trial.

Around the time of the robbery and murder, Sandra Shaw, who lived in the Rolling Hills Apartment complex located behind the BP Express, overheard the dispatch call concerning a shooting at the BP Express on her police scanner. When Ms. Shaw went outside and looked towards the BP Express, she saw a tall, African-American male running from the store towards the apartment complex.

Several agents with the Tennessee Bureau of Investigation ("TBI"), including Special Agent John Sullivan, arrived on the scene around midnight to aid local law enforcement in the investigation. Initially, Agent Sullivan noticed several loose coins lying on the ground outside of the store near the entrance. Upon entering the store, Agent Sullivan discovered more loose coins, a significant amount of blood, and the cash register

---

[1] The victim's given name was Deepal Patel. However, throughout the record in this matter, the witnesses referred to him by his nickname, "Danny."

on the floor. As part of processing the crime scene, Agent Sullivan also reviewed the video of the robbery and murder that was captured on the store's video surveillance system.

Later that morning and with the aid of daylight, Agent Sullivan and others returned to the scene and began to follow the trail of coins they had discovered the night before. According to Agent Sullivan, the trail led from the store to the parking lot of the Rolling Hills Apartments. However, the trail ended in the parking lot.

On the morning of November 15, 2012, Barbara Patrick woke to discover that her red 1989 GMC pickup truck had been stolen. At trial, Ms. Patrick was shown photographs of the condition of her truck after it had been located by law enforcement and testified that the steering column was broken and that the rolled coins found inside the vehicle did not belong to her and were not in the vehicle when she last saw it on November 14, 2012.

That same morning, the defendant arrived at his sister's home and informed her boyfriend, Ronald Horne, that he needed to "drop off" a truck and asked if Mr. Horne would follow him and give him a ride home afterwards. According to Mr. Horne, he then followed the defendant to Somerville, Tennessee where the defendant pulled the truck into a field. After traveling about 200 yards from the road, the defendant parked the truck in a wooded area of the field. When the two returned to Covington, Tennessee, the defendant had Mr. Horne drive him to Mid-City Auto Sales where the defendant purchased a 1996 Chevy Truck. According to Billy Carroll, a salesman at Mid-City Auto Sales, the defendant made a cash payment of $813 -- $500 down plus $313 in taxes. The defendant's credit report showed that he was not employed. Mr. Horne also testified that the defendant was not employed at the time. Mr. Carroll testified that the defendant returned to the car lot on November 26, 2012, and purchased a 1999 Chevy Tahoe. The defendant paid $3,292 in cash for the vehicle.

Several days later, Officer David Pressley with the Somerville Police Department met with Mr. Horne because he had been developed as a suspect in the robbery. During their conversation, Mr. Horne told Officer Pressley about the truck the defendant had "dropped off" in the field a few days earlier. He then led Officer Pressley to the location. In searching the vehicle, Officer Pressley discovered that the steering column was broken and found rolled and loose coins in the vehicle. He also discovered Ms. Patrick's insurance card inside of the vehicle. At trial, Ms. Patrick identified the truck as her vehicle that had been stolen on or about November 14, 2012.

On November 17, 2012, Agent Sullivan received a tip concerning possible evidence located on the property of the Lauderdale County Alternative School. The

school property is located about a mile from the BP Express. Based on this information, Agent Sullivan and Agent Jeff Jackson searched the area around the school. Their search produced several pieces of the metal cash box and the plastic drawer that sits inside the box. The agents also discovered two larger pieces of the metal cash box along with what appeared to be a mask hidden in a pile of leaves on the school property.

The mask, along with other pieces of potential evidence, was sent to the TBI crime lab for testing. Agent Lawrence James, an expert in the field of serology and DNA, testified that he was able to retrieve DNA from the mask, which he described as a "sleeve that someone cut off a thermal shirt." He then compared the DNA profile he obtained from the mask to the defendant's DNA sample and determined that the defendant was the major contributor to the DNA profile found on the mask. According to Agent James, the probability that the DNA profile found on the mask matched anyone other than the defendant exceeded the population of the world.

After the defendant's arrest and prior to trial, he came into contact with Charlie Leavy, who was serving time for theft and burglary. While the two were being transported from the Bledsoe County Correctional Facility to Lauderdale County, the defendant confessed to Mr. Leavy that he had robbed the BP Express and shot the clerk. More specifically, the defendant confessed that he parked his truck in the Rolling Hills Apartment Complex and walked over to the store armed with a shotgun. Upon entering the store, he demanded the money from the clerk. When the clerk refused and reached for a gun, the defendant shot him.

The defendant also confessed to Anthony Grandberry[2] while the two were housed together in 2013. According to Anthony Grandberry, the defendant confessed that he stole a red pickup truck, went into a store to rob it, shot the clerk in the face, and left with the "cash register." The defendant also admitted to Anthony Grandberry that he would have "got away with it if he wouldn't have left the ski mask in the field."

In addition to the testimony of the witnesses, the State also introduced and played for the jury footage of the robbery and murder that was captured by the store's video surveillance system.

At the conclusion of the trial, the jury found the defendant guilty of murder in the perpetration of a felony (Count 2), especially aggravated robbery (Count 3), aggravated assault as a lesser-included offense of attempted first degree murder (Count 4), felon in possession of a weapon (Count 7), and theft between $1000 and $10,000 (Count 8). The

---

[2] Though the defendant and Anthony Grandberry are related, Anthony Grandberry was not sure as to the degree.

jury found the defendant not guilty of employing a firearm during the commission of a dangerous felony (Count 5) and failed to reach a verdict on premeditated first degree murder (Count 1). The State subsequently dismissed Count 1. As a result of his convictions, the defendant received an effective sentence of life without the possibility of parole plus 27 years. This timely appeal followed.

*Analysis*

The defendant argues that the evidence is insufficient to sustain his convictions. He contends that evidence presented by the State is not sufficient to establish his identity as the assailant. The State responds that the evidence was sufficient. We agree with the State.

When a defendant challenges the sufficiency of the evidence, the relevant question for this Court is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this Court will not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this Court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "[A]lthough inconsistencies or inaccuracies may make the witness a less credible witness, the jury's verdict will not be disturbed unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a reasonable doubt of the appellant's guilt." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999).

A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This Court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

Although the defendant's face was covered, Mr. Shepard was able to identify the defendant based on his eyes. When law enforcement searched the surrounding area for evidence, they discovered, among other things, the cash drawer from the BP Express and a mask. Mr. Shepard was able to identify the mask found by law enforcement as the mask worn by the defendant. Additionally, when the mask was tested for DNA, the testing revealed that the defendant was the major contributor to the DNA profile collected from the mask. According to Agent James, the probability that the DNA matched someone other than the defendant exceeded the population of the world. Furthermore, the State presented evidence connecting the defendant to a stolen truck that was used in the robbery. Additionally, the proof revealed that the defendant, who was unemployed at the time of the robbery, was able to pay cash for two vehicles within days of the robbery. Finally, the defendant confessed to two separate individuals that he robbed the BP Express and shot the clerk. In one of his confessions, the defendant even boasted that he would have gotten away with his crime if he had not left his mask in the field.

Based on this evidence, we are persuaded that a rational trier of fact could have found beyond a reasonable doubt that the defendant committed the robbery and was responsible for the death of the victim.[3]

## Conclusion

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE

---

[3] Applying the same reasoning, we conclude that the evidence is sufficient, as well, to sustain the defendant's convictions for aggravated assault, felon in possession of a weapon and theft between $1000 and $10,000.